UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTOPHER H. ANDERSON, | CASE NO. C14-0048JLR |
| Plaintiff, | ORDER FOLLOWING IN CAMERA REVIEW |
| v. | |
| COUNTRY MUTUAL INSURANCE COMPANY, | |
| Defendant. | |

## I.   INTRODUCTION

Before the court is Defendant Country Mutual Insurance Company's ("Country Mutual") renewed motion for a protective order.  (Mot. (Dkt. # 29).)  Country Mutual seeks to withhold from discovery certain documents it claims are protected by the attorney-client privilege and the work product doctrine.  (*See id.*)  Plaintiff Christopher Anderson argues that Country Mutual should be required to produce the documents pursuant to the Washington State Supreme Court's decision in *Cedell v. Farmers*

ORDER- 1

*Insurance Co. of Washington*, 295 P.3d 239 (Wash. 2013). The court has conducted an *in camera* review of the relevant documents, and GRANTS in part and DENIES in part the motion for a protective order as described in more detail below.

## II.  BACKGROUND

This is an insurance coverage case. Mr. Anderson owned a rental property in Seattle's Seward Park neighborhood, and on December 26, 2012, the property caught fire. (Compl. (Dkt. # 1-1) ¶ 3.1.) The fire caused extensive damage, so Mr. Anderson made a claim on his insurance policy with Country Mutual. (*Id.* ¶¶ 3.1, 3.3.) Shortly thereafter, Country Mutual discovered evidence that there had been a marijuana grow operation located on the property. (Thielbar Decl. (Dkt. # 15) ¶ 4.) Consequently, Country Mutual undertook an extensive investigation of Mr. Anderson's claim. (*Id.* ¶¶ 4-8.) Country Mutual retained outside counsel—the Thenell Law Group, P.C.—to assist with its investigation and coverage determination. (*Id.* ¶ 7.) Country Mutual eventually denied Mr. Anderson's claim on October 14, 2013. (*Id.* ¶ 8.) In response, Mr. Anderson brought this complaint alleging breach of contract, bad faith, and violations of Washington's Consumer Protection Act and Insurance Fair Conduct Act. (Compl. ¶ 4.1.)

In May of this year, Country Mutual filed a motion for protective order. (5/20/14 Order (Dkt. # 13).) In the motion, Country Mutual asserted that certain documents that Mr. Anderson had requested in discovery were protected by the attorney-client privilege. (*See id.*) Country Mutual requested that the court conduct an *in camera* review pursuant to the Washington State Supreme Court's decision in *Cedell*. (*Id.*) Mr. Anderson opposed the motion. (5/28/14 Resp. (Dkt. # 16).) The court requested, and received,

additional briefing in light of its then-recent ruling in *MKB Constructors v. American Zurich Insurance Co.*, No. C13-0611JLR, 2014 WL 2526901 (W.D. Wash. May 27, 2014). (6/9/14 Min. Order (Dkt. # 24).) The parties agreed that, in light of that ruling, Country Mutual should amend its privilege log and Mr. Anderson should review the amended privilege log. (*See* Pltf. Supp. Br. (Dkt. # 25) at 3; Def. Supp. Br. (Dkt. # 26) at 2.) This occurred, and the scope of the dispute between the parties narrowed considerably. (*See* Mot. at 2-3.) However, some 103 pages of documents remained in dispute, so Country Mutual renewed its motion for a protective order on July 31, 2014. (*Id.*; Resp. (Dkt. # 31) at 2.) The court reviewed Country Mutual's amended privilege log and concluded that *in camera* review was necessary to determine which documents were privileged and which were not. (8/13/14 Order (Dkt. # 33).) Country Mutual submitted the documents that remain in dispute, and the court has now reviewed those documents and can rule on Country Mutual's motion for a protective order.

### III. ANALYSIS

**A.  Standard on a Motion for Protective Order**

District courts have broad authority to issue protective orders where appropriate. Although the Federal Rules of Civil Procedure allow for broad discovery, *see* Fed. R. Civ. P. 26(b)(1); *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993), discovery, "like all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Accordingly, a court "may, for good cause, issue a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The party seeking a protective

1 order "bears the burden, for each particular document it seeks to protect, of showing that
2 specific prejudice or harm will result if no protective order is granted." *Foltz v. State*
3 *Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). District courts are vested
4 with broad discretion in determining whether a protective order is appropriate and, if so,
5 what degree of protection is warranted. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36
6 (1984); *Phillips ex rel. Estate of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211-12 (9th
7 Cir. 2002).

**B.  Attorney-Client Privilege**

Here, the decision whether to grant a protective order is a simple one. A protective order is appropriate for documents that are protected by the attorney-client privilege or the work product doctrine, and not appropriate where no privilege or protection applies. Thus, the central question the court must answer is which documents submitted for *in camera* review are protected from disclosure and which are not.

The court begins with the attorney-client privilege. The attorney-client privilege is a long standing doctrine established to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). When it applies, the privilege protects communications made in confidence by clients to their lawyers for the purpose of obtaining legal advice. *Fisher v. United States,* 425 U.S. 391, 403 (1976); *Am. Standard Inc. v. Pfizer Inc.,* 828 F.2d 734, 745 (Fed. Cir. 1987).

In Washington, the attorney-client privilege applies differently in certain insurance cases.  In a first-party insurance bad faith action, the attorney-client privilege is presumptively inapplicable.  *Cedell*, 295 P.3d at 246.  The Washington State Supreme Court recently explained this in its opinion in *Cedell*.  *Cedell* significantly altered application of the attorney-client privilege in the context of first-party bad faith claims.  *See MKB*, 2014 WL 2526901, at *4.  Most significantly, in such cases, *Cedell* creates a "presumption that there is no attorney-client privilege relevant between the insured and the insurer in the claims adjusting process, and that the attorney-client . . . privilege[ is] generally not relevant."  *Id.* (citing *Cedell*, 295 P.3d at 246).  Nonetheless, an insurer may overcome *Cedell*'s new "presumption of discoverability by showing its attorney was not engaged in the quasi-fiduciary tasks of investigation and evaluating or processing the claim, but instead in providing the insurer with counsel as to its own liability:  for example, whether or not coverage exists under the law."  *Cedell*, 295 P.3d at 246.

There are several key guideposts in this inquiry.  First, where an attorney is acting as a de facto claims handler, the attorney's communications likely will not be privileged.  *MKB Constructors*, 2014 WL 3734286, at *8.  For example, in *Cedell*, the insurer's attorney examined witnesses under oath.  *Cedell*, 295 P.33d at 242.  He also communicated directly with the insured, authored and signed the insurer's denial letter, and initiated settlement negotiations with the insured.  *See id.*; *see also Hilborn v. Metro. Group Prop. & Cas. Ins. Co.*, No. 2:12-cv-00636-BLW, 2013 WL 6055215, at *3 (D. Idaho Nov. 15, 2013) (attorneys admitted that they were retained to investigate the claim and one attorney placed a phone call to a third party to investigate the claim); *HSS*

ORDER- 5

*Enters., LLC v. Amco Ins. Co.*, No. C06-1485-JPD, 2008 WL 163669, at *1-2 (W.D. Wash. Jan. 14, 2008) (attorneys conducted examinations under oath, assisted the insurer with its factual investigation, and adjusted the claim); *Ivy Hotel San Diego, LLC v. Houston Cas. Co.*, No. 10cv2183-L (BGS), 2011 WL 4914941, at *5 (S.D. Cal. Oct. 17, 2011) (attorney became primary point of contact with insured regarding insured's claim). On the other hand, where the attorney is clearly acting as coverage counsel and advising the insurer of its potential for liability, the communications likely will be privileged. *MKB Constructors*, 2014 WL 3734286, at *8.  It may be difficult to assess when a particular communication is on one side of this line or the other, but as a general matter, there will likely be no privilege for a lawyer investigating facts to reach a coverage decision, but there likely will be a privilege for a lawyer giving an insurer strictly legal advice about potential liability that could result from a coverage decision or some other course of action. *See id.*

In addition, even a showing that the privilege applies can be overcome.  Even if an insurer demonstrates that an attorney was not serving in a quasi-fiduciary role, under *Cedell*, an insured may still be able to pierce the insurer's assertion of attorney-client privilege. *See MKB*, 2014 WL 2526901, at *4.  If the insured asserts that the insurer has engaged "in an act of bad faith tantamount to civil fraud" and makes "a showing that a reasonable person would have a reasonable belief that an act of bad faith has occurred" or that an insurer has engaged in a "bad faith in attempt to defeat a meritorious claim," then the insurer will be deemed to have waived the privilege. *See Cedell*, 295 P.3d at 246-47. Obviously, something more than an honest disagreement between the insurer and the

insured about coverage under the policy must be at play. *MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-0611JLR, 2014 WL 3734286, at *7 (W.D. Wash. July 28, 2014).

C. **Documents Protected by Attorney-Client Privilege**

For the following documents, Country Mutual has not met its burden of overcoming *Cedell*'s presumption that the attorney-client privilege does not apply. For each of these documents, the court's review has revealed that either (1) the attorneys involved were engaged in the quasi-fiduciary process of investigating, evaluating, or processing the claim or (2) the attorney-client privilege is otherwise inapplicable. For most of these documents, the communications concern de facto claims handling. The communications involve, for example, conducting an examination under oath, making factual assessments and determinations, or being the direct point of contact with the insured. As outlined above, this puts these documents squarely in the category of unprivileged documents under *Cedell*. *See Cedell*, 295 P.33d at 242; *Hilborn*, 2013 WL 6055215, at *3; *HSS Enters.*, 2008 WL 163669, at *1-2; *Ivy Hotel*, 2011 WL 4914941, at *5. Accordingly, the following documents should be produced:

- CMIC CLAIM FILE 000056-57
- CMIC CLAIM FILE 000060
- CMIC CLAIM FILE 000062
- CMIC CLAIM FILE 000073-74
- CMIC CLAIM FILE 000920-23
- CMIC CLAIM FILE 002795

- CMIC CLAIM FILE 002799
- CMIC CLAIM FILE 002806
- CMIC CLAIM FILE 002817
- CMIC CLAIM FILE 002818-19
- CMIC CLAIM FILE 002820
- CMIC CLAIM FILE 002864-68
- CMIC CLAIM FILE 002889
- CMIC CLAIM FILE 002968-69
- CMIC CLAIM FILE 003432
- CMIC CLAIM FILE 003433
- CMIC CLAIM FILE 003435
- CMIC CLAIM FILE 003489
- CMIC CLAIM FILE 004798-99
- CMIC CLAIM FILE 004890-98
- CMIC CLAIM FILE 005068-5103
- TLG EMAILS[1] pp. 1-8, 11-91, 107, 116-17, 129-38, 162-93.

---

[1] In its submission for *in camera* review, Country Mutual included 193 pages of documents labeled "Electronic Emails Maintained by TLG [Thenell Law Group]." Unlike the rest of the documents in Country Mutual's submission, these TLG Emails do not have a uniform numbering system that allows the court to easily refer to them. As such, the court has itself labeled the TLG Emails with page numbers from 1 to 193, numerically, in the order that they appear in Country Mutual's submission. If Country Mutual is confused in any way about this numbering system or simply wishes to confirm that it is producing the correct documents, Country Mutual may pick up a copy of its *in camera* submission from the court and utilize the page number labels found therein.

ORDER- 8

For the following documents, Country Mutual has demonstrated that the attorney-client privilege applies.  In other words, Country Mutual has met its burden of overcoming the *Cedell* presumption, and there is no countervailing showing that there is bad faith tantamount to civil fraud.  For these documents, the court's review has revealed that the attorney-client privilege applies and the attorneys involved were not engaged in the quasi-fiduciary process of investigating, evaluating, or processing the claim, but rather in providing coverage advice, or other legal advice, to Country Mutual.  These documents do not need to be produced, and the court GRANTS Country Mutual a protective order with respect to them:

- CMIC CLAIM FILE 002699-2700
- CMIC CLAIM FILE 002704-09
- CMIC CLAIM FILE 002710-11
- CMIC CLAIM FILE 002821-24
- CMIC CLAIM FILE 002825-28
- CMIC CLAIM FILE 002871-75
- CMIC CLAIM FILE 002878-79
- CMIC CLAIM FILE 002999-3000
- CMIC CLAIM FILE 003490-95
- CMIC CLAIM FILE 004867-68
- CMIC CLAIM FILE 004869-71
- CMIC CLAIM FILE 004872-79

- CMIC CLAIM FILE 004880-81
- CMIC CLAIM FILE 004882-89
- TLG EMAILS pp. 9-10, 92-106, 108-115, 121-28, 139-61.

In addition, the following documents should be produced in redacted form as explained below. For these documents, the court GRANTS a protective order inasmuch as it concludes that redactions are permitted and DENIES a protective order inasmuch as redacted versions of the documents must actually be produced:

- CMIC CLAIM FILE 002870 (redact the paragraph beginning with "I agree")
- CMIC CLAIM FILE 002997 (redact the paragraphs beginning with "I believe" and "I think")
- CMIC CLAIM FILE 002998 (redact the sentences beginning with "We did," "Did you," and "I believe")
- TLG EMAILS pp. 118-20 (redact in accordance with the instructions for CMIC CLAIM FILE 002997-98 as the same communications are involved).

**D. Work Product Doctrine**

Federal law governs the court's inquiry into whether the work product doctrine applies. *MKB Constructors*, 2014 WL 2526901, at *8. Application of the work product doctrine in diversity cases is determined under a uniform federal standard embodied in Federal Rule of Civil Procedure 26(b)(3). *Frontier Refining, Inc. v. Gorman-Rupp, Inc.*,

ORDER- 10

136 F.3d 695, 702 n.10 (10th Cir. 1998); *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). Rule 26(b)(3) provides, in pertinent part:

> **(3) Trial Preparation: Materials.**
>
> **(A)** Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > **(i)** they are otherwise discoverable under Rule 26(b)(1); and
> >
> > **(ii)** the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3).[2]

The work product doctrine is not an evidentiary privilege, but rather a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation. *Admiralty Ins. Co. v. U.S. Dist. Court for Dist. Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989.) The primary purpose of the work product rule is to "prevent exploitation of a party's efforts in preparation for litigation." *Id.* Thus, the party asserting the privilege must demonstrate the threat of litigation was impending. *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 635 (D. Nev. 2013). When the

---

[2] Work product is divided into two general categories: (1) ordinary work product, which is governed by the provisions found in Rule 26(b)(3)(A) and (2) opinion work product, which is governed by the provisions found in Rule 26(b)(3)(B). Opinion work product, which represents an attorney's mental impressions, conclusions, legal strategies, and opinions developed in anticipation of litigation, is "virtually undiscoverable." *Republic of Ecuador v. Mackay*, 742 F.3d 860, 869 n.3 (9th Cir. 2014.)

issue comes before the court, it necessarily requires a case-by-case inquiry. *Id.* (citing *Garcia v. City of El Centro*, 214 F.R.D. 587, 592 (S.D. Cal. 2003). The party invoking the work product doctrine bears the burden of establishing that it applies. *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011).

The Ninth Circuit has stated that "a document should be deemed prepared in anticipation of litigation and thus eligible for work product protection under Rule 26(b)(3) if in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Subpoena (Mark Torf)*, 357 F.3d 900, 907 (9th Cir. 2004). If a document would have been created in substantially similar form in the normal course of business, however, the fact that litigation is afoot will not protect it from discovery. *Id.* at 908. Where a document serves a dual purpose—i.e., the document "was not prepared exclusively for litigation"—the Ninth Circuit applies the "because of" standard:

> Dual purpose documents are deemed prepared because of litigation if in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation. In applying the "because of" standard, courts must consider the totality of the circumstances and determine whether the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation.

*Richey*, 632 F.3d at 567-68 (internal quotation marks omitted); *see also In re Grand Jury*, 357 F.3d at 907-08.

ORDER- 12

**E.     Documents Protected by Work Product Doctrine**

Country Mutual makes two assertions that the work product doctrine applies. First, it asserts that the doctrine protects from disclosure CMIC CLAIM FILE 002864-68, described in the amended privilege log as "Draft Denial language prepared by TLG for review and consideration by Country Mutual based on legal analysis." (3d. Am. Priv. Log (Dkt. # 30-1) at 8.)

Under the clear precedent outlined above, the work product doctrine does not apply to this document. The document is a draft of a coverage denial letter to be sent from Country Mutual to Mr. Anderson. As explained above, if a document would have been created in substantially similar form in the normal course of business, the fact that litigation is afoot will not protect it from discovery. *In re Grand Jury Subpoena*, 357 F.3d at 908. There can be little doubt that Country Mutual would have sent Mr. Anderson a denial letter regardless of whether it anticipated that he might take legal action after receiving it. There is nothing in this denial letter to suggest that it was written specifically with the goal of preparing for litigation, nor is there anything at all to indicate that it would not have been created in substantially similar form in the normal course of business. *See id.* As such, Country Mutual has not met its burden of demonstrating that the work product protection applies. *See id.* at 907; *Richey*, 632 F.3d at 566-68.

Second, Country Mutual makes a blanket assertion that the work product doctrine protects all of the 193 pages of emails contained in its *in camera* submission labeled "Electronic Emails Maintained by TLG [Thenell Law Group]." (3d Am. Priv. Log at 8.)

As described above, 61 of these pages are protected (or can be redacted to be protected) by the attorney-client privilege. For these documents, the court will not address whether the work product doctrine applies because it is unnecessary to do so at this time. For the remainder of the TLG emails, Country Mutual has not met its burden of demonstrating that the work product doctrine applies. *See Richey*, 632 F.3d at 566. The vast majority of these 132 documents do not involve anything that could be remotely construed as having been produced "in anticipation of litigation." *See In re Grand Jury Subpoena*, 357 F.3d at 907-08. Instead, they involve mostly routine claims-handling matters with no indication that anything outside the ordinary is being done in anticipation of litigation. In other words, these documents would have been produced in substantially similar form in the ordinary course of business. *See id.* The only exceptions to this are documents that are otherwise protected by the attorney-client privilege. As such, none of the TLG emails warrant protection under the work product doctrine.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Country Mutual's renewed motion for protective order (Dkt. # 29) as described more thoroughly above.

Dated this 25th day of August, 2014.

JAMES L. ROBART
United States District Judge