UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER H. ANDERSON,

          Plaintiff,

        v.

COUNTRY MUTUAL INSURANCE
COMPANY,

          Defendant.

CASE NO. C14-0048JLR

ORDER DENYING CROSS-
MOTIONS FOR SUMMARY
JUDGMENT

## I.   INTRODUCTION

Before the court are the parties' cross-motions for summary judgment.  (Pltf.'s
Mot. (Dkt. # 55); Def.'s Mot. (Dkt. # 58).)  The court has considered the parties'
submissions, the balance of the record, and the relevant law.  Being fully advised,[1] the
court DENIES both motions.

---

[1] The court finds that oral argument is unnecessary.

ORDER- 1

## II.   BACKGROUND

This is an insurance coverage case arising out of a fire at a house that Plaintiff Christopher H. Anderson owned in Seattle, Washington ("the House").  (*See* Ver. of State Ct. Rec. (Dkt. # 3) Ex. 1 (Dkt.  # 3-1) ("Compl."); Anderson Decl. (Dkt. # 56) ¶ 3.)  The fire occurred on December 26, 2012, and caused significant damage to the House.  (Compl. ¶ 3.1.)  The Seattle Fire Department ("SFD") responded to the scene and conducted an investigation.  (*See* Thielbar Decl. (Dkt. # 61) ¶ 6, Ex. I (Dkt. # 61-3) ("SFD Report").)  The investigation concluded that the fire occurred due to an overheated electrical outlet in the basement that was rewired for an illegal marijuana growing operation ("the Operation").  (*See id.*)

The Seattle Police Department ("SPD") also conducted an investigation.  (4th Carsely Decl. (Dkt. # 49) ¶ 11, Ex. F. (Dkt. # 49-6) ("SPD Report").)   In the course of this investigation, Detective Marco Ortiz found that the Operation was concealed within the basement with false walls, that electricity was diverted to the Operation so that the power used for the Operation would not show up on the electricity meter, and that an air-filtering and venting system was installed to hide the smell of the Operation.   (*See* SPD Report at 2-4; Thenell Decl. (Dkt. # 59) ¶ 2, Ex. A (Dkt. # 59-1) ("Ortiz Dep.")[2] at 19:17-20:13, 21:3-22:18; Weber Decl. (Dkt. # 64) ¶ 5, Ex. D (Dkt. # 64-4) ("Lefebvre Dep.") at 40:19-41:5.)

---

[2] Detective Ortiz's deposition transcript also appears in the record in another location. (*See* 5th Carsley Decl. (Dkt. # 57) ¶ 7, Ex. F (Dkt. # 57-6).)

ORDER- 2

1    Mr. Anderson had a homeowner's insurance policy with Defendant Country

2   Mutual Insurance Company ("Country Mutual") that was effective at the time of the fire.

3   (*See* Thielbar Decl. ¶ 3, Ex. H (Dkt. ## 61-1, 61-2) ("Policy").)  On January 3, 2013, Mr.

4   Anderson reported the fire to Country Mutual, which began its own investigation.  (*See*

5   Thielbar Decl. ¶¶ 5-6.)  Country Mutual collected SFD and SPD reports, reviewed news

6   reporting on the fire, and interviewed witnesses.  (*See, e.g.*, 5th Carsely Decl. (Dkt. # 57)

7   ¶ 2, Ex. A (Dkt. # 57-1) ("Thielbar Dep.") at 67:24-69:12, 84-94; Weber Decl. ¶ 7, Ex. F

8   (Dkt. # 64-6) ("Lefebvre Email"); Lefebvre Decl. (Dkt. # 60) ¶ 3, Ex. G (Dkt. # 60-3)

9   ("Anderson 1/10/13 Statement")[3].)  To facilitate this investigation, Mr. Anderson signed

10   multiple releases enabling Country Mutual to obtain documents and made available a

11   number of additional documents not covered by the releases.  (*See, e.g.*, 4th Carsley Decl.

12   ¶ 19, Ex. J. (Dkt. # 49-10) ("1/9/13 Email").)   In addition, Mr. Anderson hired Paul

13   Gaouette of Adjusters International, a private adjusting firm, to assist him with the

14   presentation of his claim.  (*See* 5th Carsley Decl. ¶ 8, Ex. G (Dkt. # 57-7) ("Gaouette

15   Dep.") at 7:5-7.)

16    Since the outset of Country Mutual's investigation, Mr. Anderson has maintained

17   that he did not know about the Operation and suggested that it was likely carried on by

18   his tenant, Mark Gray.  (*See, e.g.*, Anderson 1/10/13 Statement at 30; 2d Carsley Decl.

19

20
_____

21   [3] Mr. Anderson's statement from January 10, 2013, also appears in the record at another
location.  (*See* 2d Carsley Decl. (Dkt. # 22) ¶ 7, Ex. F (Dkt. # 22-1) at 25-29; 5th Carsley Decl.,
22   ¶ 3, Ex. B (Dkt. # 57-2).)

ORDER- 3

1   (Dkt. # 22) ¶ 8, Ex. G (Dkt. # 22-2) at 2-13 ("Anderson 2/8/13 Statement")[4]; Pltf.'s Mot.

2   at 3-4.)  Mr. Anderson told Country Mutual about his tenant around the time he gave

3   notice of the fire and provided a form lease agreement signed by Mr. Gray.  (See

4   Anderson 1/10/13 Statement at 6; Lefebvre Decl. ¶ 2, Ex. E (Dkt. # 60-1) ("Lease

5   Email"), Ex. F (Dkt. # 60-2) ("Lease").)  Mr. Anderson told Country Mutual that he

6   thought Mr. Gray had lived in the House for about 19 months with his girlfriend and two

7   children.  (Anderson 1/10/13 Statement at 6-7; Anderson 2/8/13 Statement at 18; Pltf.'s

8   Mot. at 3.)  In addition, Mr. Anderson related that he had visited the House on several

9   occasions while Mr. Gray lived there, including to repair the deck, but had never

10  conducted a walkthrough, gone into the basement, or detected the Operation.  (See

11  Anderson 1/10/13 Statement at 7-9, 26-27; Anderson 2/8/13 Statement at 28-31, 35-36.)

12  Mr. Anderson further asserted that he does not smoke marijuana and has never grown it.

13  (Anderson 2/8/13 Statement at 36-37.)

14        On January 10, 2013, Country Mutual claims handler James Lefebvre conducted

15  an initial interview with Mr. Anderson.  (See generally Anderson 1/10/13 Statement.)

16  During that interview, Mr. Lefebvre asked Mr. Anderson where he was at the time of the

17  fire.  (Id. at 20.)  Mr. Anderson responded that he was golfing in Chelan, Washington.

18  (See id.; see also Anderson 2/8/13 Statement at 38-39.)  In checking Mr. Anderson's

19

20

---

21        [4] Mr. Anderson's statement from February 8, 2013, also appears in the record at another
22  location.  (See Thielbar Decl. ¶ 11, Ex. K (Dkt. # 61-5); 5th Carsley Decl. ¶ 4, Ex. C (Dkt. # 57-3).)

1   story, Country Mutual learned that the golf course was closed on December 26, 2012, due

2   to snow.  (Thielbar Decl. ¶ 12.)

3          Approximately one month later, Country Mutual special investigator Chris

4   Thielbar conducted a second interview with Mr. Anderson.  (*See id.* ¶ 11; Anderson

5   2/8/13 Statement.)  Mr. Theilbar confronted Mr. Anderson with the facts about the snow,

6   to which Mr. Anderson responded that he had actually been in Roslyn, Washington, on

7   December 26, 2012, with a prostitute named Teyana Dorsey.  (*See* Anderson 2/8/13

8   Statement at 37-41.)  Mr. Anderson acknowledged that he had lied about his whereabouts

9   but explained that his only motive was to prevent his daughter from finding out that he

10  was with Ms. Dorsey.  (*See id.* at 38-43.)

11         In addition to that misrepresentation, Country Mutual claims to have discovered

12  several other irregularities in Mr. Anderson's statements.  (*See* Def.'s Mot. at 3-6.)  For

13  example, Country Mutual asserts that Mr. Anderson has testified inconsistently about the

14  frequency and timing of his visits to the House in the months leading up to the fire and

15  about how he received and processed rent payments from Mr. Gray.  (*See id.* at 4-6.)

16  Country Mutual highlights contradictory statements from Mr. Anderson about Mr. Gray's

17  vehicle.  (*See id.* at 4, 6.)  Country Mutual also points out that after the fire the SPD

18  found property belonging to Mr. Anderson in the House; that the lease agreement is

19  inconsistent with Mr. Anderson's statements because it lists Mr. Anderson as a co-

20  resident and prohibits children; and that the utilities for the House were in Mr.

21  Anderson's name.  (*See id.* at 3, 5.)  Furthermore, Country Mutual has been unsuccessful

22  in locating Mr. Gray.  (Thielbar Decl. ¶ 20.)

1    On October 9, 2013, Country Mutual sent a letter to Mr. Anderson informing him

2  that it was denying coverage.  (*See* 2d Carsley Decl. ¶ 15, Ex. N (Dkt. # 22-3) at 21-25.

3  ("Denial Letter").)  It based this denial on two policy exclusions.  (*See id.* at 4.)  The first

4  exclusion precludes coverage when the insured has misrepresented any material fact

5  relating to the insurance ("the misrepresentation exclusion").  (*See id.*; Policy at 32.)  The

6  second exclusion bars coverage when the loss results from the illegal manufacture of

7  controlled substances and the insured has knowledge of such manufacture ("the

8  controlled substances exclusion").  (*See* Denial Letter at 4; Policy at 26, 28.)  The denial

9  letter supported application of those exclusions with the following facts:  Mr. Anderson

10  admitted to visiting the House on numerous occasions before the fire and misrepresented

11  his whereabouts at the time of the fire.  (*See* Denial Letter at 3-4.)

12    During the investigation, Country Mutual made payments to Mr. Anderson

13  totaling $5,565.29 and $29,200.00.  (*See* Thielbar Decl. ¶ 21, Ex. O (Dkt. # 61-9)

14  ("Ledger").)  The first sum was, in Country Mutual's words, "towards the Dwelling,"

15  while the second was for rent replacement.  (*See id.*)  Also during the investigation,

16  Country Mutual paid $97,996.74 for the actual cash value ("ACV") of the House to Mr.

17  Anderson's mortgagee as the loss payee under Mr. Anderson's policy.  (*See id.*; Def.'s

18  Mot. at 14.)  Mr. Anderson alleges that the denial of coverage caused him to lose the

19  property because he could no longer afford his mortgage and had to sell the property to

20  avoid foreclosure.  (*See* Anderson Decl. ¶ 3.)  Mr. Anderson also contends that if

21  coverage had not been denied, he would have retained the property and repaired or

22

1  replaced the House.  (*See id.*; Weber Decl. (Dkt. # 64) ¶ 15, Ex. L (Dkt. # 64-12)

2  ("Neupert Dep.") at 5, 7.)

3       On December 20, 2013, Mr. Anderson filed this lawsuit in the Superior Court for

4  King County, Washington, bringing claims against Country Mutual for breach of

5  contract, bad faith, and violation of the Consumer Protection Act ("CPA"), RCW ch.

6  19.86.010, *et seq.*, and the Insurance Fair Conduct Act ("IFCA"), RCW 48.30.15.  (*See*

7  *generally* Compl.)  Country Mutual removed the case to this court on January 10, 2014.

8  (Not. of Rem. (Dkt. # 1).)  Shortly thereafter, Country Mutual filed an answer and

9  asserted two counterclaims for breach of contract.  (*See* Answer (Dkt. # 6) at 8-9.)

10      The parties filed the instant cross-motions for summary judgment on December

11  16, 2014.  (*See* Pltf.'s Mot.; Def.'s Mot.)  Mr. Anderson moves for partial summary

12  judgment on two issues.  (Pltf.'s Mot. at 2.)  First, Mr. Anderson asks the court to rule

13  that Country Mutual is estopped from relying on evidence other than what it stated in its

14  denial letter, provided Country Mutual knew or should have known of the additional

15  evidence at the time of the denial letter.  (*See id.* at 11-18; Pltf.'s Reply at 2-9.)  Second,

16  Mr. Anderson seeks to preclude Country Mutual from asserting the controlled substances

17  exclusion.  (*See* Pltf.'s Mot. at 2.)  Mr. Anderson argues that Country Mutual had so little

18  evidence of Mr. Anderson's knowledge of the Operation that its conclusion in that regard

19  is unreasonable as a matter of law.  (*See id.* at 18-23; Pltf.'s Reply at 9-12.)  He points out

20  that Country Mutual lacked any direct evidence of Mr. Anderson's knowledge, distrusted

21  Mr. Anderson, and failed to pursue avenues of investigation that might have corroborated

22

1  Mr. Anderson's story, such as the efficacy of the various measures concealing the

2  Operation.  (*See* Pltf.'s Mot. at 20-23; Pltf.'s Reply at 10-12.)

3          Country Mutual, in turn, moves for summary judgment on five issues.  (*See* Def.'s

4  Mot. at 10-17.)  First, it asks the court to rule that the misrepresentation exclusion applies

5  because Mr. Anderson's initial statement about his whereabouts is a material

6  misrepresentation.  (*See id.* at 10-11; Def.'s Reply at 2-3.)  Second, it moves for summary

7  judgment on the reasonableness of its conclusion that Mr. Anderson knew about the

8  Operation and thus that the controlled substances exclusion barred coverage.  (*See* Def.'s

9  Mot. at 13-14; Def.'s Reply at 4-5.)  Third, Country Mutual argues that it is enjoys

10  immunity from Mr. Anderson's bad faith, IFCA, and CPA claims under RCW 48.50.075.

11  (*See* Def.'s Mot. at 14-15; Def.'s Reply at 6-7.)  That statute protects insurance

12  companies who deny coverage in reliance on a written opinion from a qualified agency

13  that the claim involves criminal activity and that the insured is the target of the

14  investigation.  *See* RCW 48.50.075.  Fourth, Country Mutual contends that Mr.

15  Anderson's bad faith claim must fail because he has no evidence of damages.  (*See* Def.'s

16  Mot. at 16-17; Def.'s Reply at 7.)  Fifth and finally, it requests a determination that it has

17  fulfilled its obligations under the contract by paying the ACV of the House to Mr.

18  Anderson's mortgagee.  (*See* Def.'s Mot. at 14; Def.'s Reply at 5-6.)

19          The parties' cross-motions are now before the court.  For the reasons stated below,

20  the court finds that summary judgment is inappropriate on the issues raised by the parties

21  and therefore DENIES the parties' cross-motions for summary judgment.

22

# III.    DISCUSSION

## A.    Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" if the evidence is such that reasonable persons could disagree about whether the facts claimed by the moving party are true.  *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983).

> [T]he issue of material fact required . . . to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.

*First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  The court may not weigh evidence or make credibility determinations in analyzing a motion for summary judgment because these are "jury functions, not those of a judge."  *Anderson*, 477 U.S. at 249-50.

The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S.

1   at 323.  If the moving party meets his or her burden, the non-moving party "must make a

2   showing sufficient to establish a genuine dispute of material fact regarding the existence

3   of the essential elements of his case that he must prove at trial."  *Galen*, 477 F.3d at 658.

4   **B.**    **Mr. Anderson's Knowledge of the Operation**

5        Both Country Mutual and Mr. Anderson move for summary judgment on the issue

6   of whether Country Mutual reasonably concluded that Mr. Anderson knew about the

7   Operation.  (*See* Def.'s Mot. at 13-14; Pltf.'s Mot. at 18-23.)  As described above,

8   Country Mutual invoked the controlled substances exclusion as one of its bases for

9   denying coverage.  (*See* Denial Letter at 4.)  In doing so, it relied on its conclusion that

10  Mr. Anderson knew about the Operation.  (*See id.*)  Mr. Anderson now alleges that

11  Country Mutual's denial of coverage on that basis amounts to bad faith because Country

12  Mutual lacked a reasonable basis for its determination that Mr. Anderson knew about the

13  Operation.  (*See* Pltf.'s Mot. at 20-23.)

14        An insurer has an obligation to act in good faith when dealing with its insureds.

15  *See* RCW 48.01.030; *Indus. Indem. Co. of the Nw., Inc. v. Kallevig*, 792 P.2d 520, 526

16  (Wash. 1990).  "This fiduciary duty . . . is fairly broad and may be breached by conduct

17  short of intentional bad faith or fraud."  *Kallevig*, 792 P.2d at 526 (citing *Phil Schroeder,*

18  *Inc. v. Royal Globe Ins. Co.*, 659 P.2d 509 (Wash. 1983)).  "Thus, an insurer's denial of

19  coverage, without reasonable justification, constitutes bad faith."  *Id.*  Notably, however,

20  bad faith is an issue of fact that is rarely appropriate for summary judgment.  *See Hell*

21  *Yeah Cycles v. Ohio Sec. Ins. Co.*, 16 F. Supp. 3d 1224, 1235 (E.D. Wash. 2014) (citing

22  *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003)).

1    In raising this issue on summary judgment, therefore, each party is effectively

2    arguing that, even viewing the facts in the light most favorable to the opposing side, no

3    reasonable jury could disagree about the reasonableness (or unreasonableness) of Country

4    Mutual's determination regarding Mr. Anderson's knowledge.  *See Hell Yeah Cycles*, 16

5    F. Supp. 3d at 1235; *Smith*, 78 P.2d at 1277-78.  Both parties are mistaken.  Viewing the

6    evidence as it must at summary judgment, *see Scott*, 550 U.S. at 378, the court finds that

7    reasonable minds could differ regarding the reasonableness of Country Mutual's decision

8    to invoke the controlled substances exclusion.  *See Hell Yeah Cycles*, 16 F. Supp. 3d at

9    1235.  Summary judgment is therefore inappropriate.

10    Country Mutual points to the following facts to support its position that Mr.

11    Anderson knew about the Operation:  Mr. Anderson admitted to visiting the House in the

12    months leading up the fire, the SPD discovered items belonging to Mr. Anderson at the

13    House, few other items consistent with tenancy were found at the House, the utilities

14    remained in Mr. Anderson's name, the lease agreement lists Mr. Anderson as a resident,

15    Mr. Anderson misrepresented his whereabouts on the night of the fire, Mr. Anderson

16    waited a week to inform Country Mutual of the fire, and Mr. Gray has not been located.

17    (*See* Def.'s Mot. at 13; Def.'s Resp. at 9-10.)  Based on those facts, Country Mutual

18    argues that it reasonably concluded that Mr. Anderson knew about the Operation.  (*See*

19    Def.'s Mot. at 13-14; Def.'s Resp. at 9-10.)

20    Mr. Anderson, on the other hand, relies on weaknesses in Country Mutual's

21    evidence and on his own repeated and consistent denials of knowledge.  For example,

22    Mr. Anderson notes that Country Mutual's conclusion depends entirely on inferences

1   from circumstantial evidence and total disbelief of Mr. Anderson's denials of knowledge.

2   (*See* Pltf.'s Mot. at 21-23; Pltf.'s Reply at 10-12; Pltf.'s Resp. at 16-18.)  Mr. Anderson

3   further points out that Country Mutual failed to investigate aspects of the claim that might

4   have corroborated Mr. Anderson's denial, such as the efficacy of the measures used to

5   hide the Operation.  (*See, e.g.*, Pltf.'s Mot. at 22.)  On the basis of these arguments, Mr.

6   Anderson contends that Country Mutual's conclusion regarding his knowledge of the

7   Operation amounts to nothing more than unreasonable speculation.  (*See* Pltf.'s Mot. at

8   22-23.)

9        Neither party has shown that the undisputed facts entitle it to judgment as a matter

10  of law on the reasonableness of Country Mutual's conclusion.  *See Hell Yeah Cycles*, 16

11  F. Supp. 3d at 1235.  Country Mutual relies on inferences from circumstantial evidence

12  and judgments about Mr. Anderson's credibility.  (*See* Def.'s Mot. at 13; Def.'s Resp. at

13  9-10.)  Yet viewing the facts in the light most favorable to Mr. Anderson, the court

14  cannot say that reasonable minds could only agree with Country Mutual.  Rather a

15  reasonable jury could potentially find that Country Mutual's inferences from the evidence

16  and mistrust of Mr. Anderson were unwarranted, based on an inadequate investigation,

17  and unreasonable.  *See Anderson*, 477 U.S. at 455 ("Credibility determinations, the

18  weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

19  functions, not those of a judge . . . on a motion for summary judgment . . . ."); *see also,*

20  *e.g.*, *Safeco Ins. Co. of Am. v. JMG Rests., Inc.*, 680 P.2d 409, 417-418 (Wash. Ct. App.

21  1984).  Conversely, viewing the facts in the light most favorable to Country Mutual, a

22  jury could find that Mr. Anderson lacks credibility and conclude that Country Mutual

ORDER- 12

1    reached a reasonable conclusion based on the available information.  *See Anderson*, 477

2    U.S. at 455.  Accordingly, summary judgment is not appropriate for either party on this

3    issue.[5]

4    **C.     Materiality of Mr. Anderson's Misrepresentation**

5           Country Mutual contends that there is no genuine dispute of material fact that Mr.

6    Anderson's misrepresentation regarding his whereabouts on the day of the fire constitutes

7    a material misrepresentation that precludes coverage.  (*See* Def.'s Mot. at 10-11.)  In

8    addition to the controlled substances clause, Country Mutual denied coverage on the

9    basis of the misrepresentation clause.  (Denial Letter at 4.)  That clause precludes

10

11          [5] The parties are somewhat unclear about the particular issue on which they seek
summary judgment.  Some of the language in the cross-motions suggests that the parties want
summary judgment on the issue of whether Mr. Anderson in fact knew about the operation. (*See,
e.g.*, Pltf.'s Mot. at 18 ("Mr. Anderson is entitled to summary judgment on the application of the
policy's controlled substances exclusion."); Def.'s Mot. at 1 ("Country Mutual . . . asks that this
[c]ourt find that an exclusion for coverage exists . . . .").)  Other language suggests that the
parties merely seek a ruling on the reasonableness of Country Mutual's decision to invoke the
controlled substances exclusion in light of the information then available.  (*See, e.g.*, Pltf.'s Mot.
at 19-20 ("Country Mutual did not act with reasonable justification in denying Mr. Anderson's
claim on the basis of the policy's controlled substances exclusion."); Def.'s Mot. at 1-2
("Country Mutual had a reasonable basis to conclude that . . . Plaintiff knew [about the
Operation].").  The former issue relates to Mr. Anderson's basic breach of contract claim, while
the latter relates to his bad faith claim.  *See, e.g.*, *Scanlon v. Life Ins. Co. of N. Am.*, 670 F. Supp.
2d 1181, 1194 (W.D. Wash. 2009) (noting that breach of contract is erroneous denial of coverage
while bad faith is, at least in some cases, unreasonable denial of coverage); *Glamuzina v. Glens
Falls Ins. Co.*, No. C07-5011 FDB, 2008 WL 2719564, at *3 (W.D. Wash. July 10, 2008) ("The
fact that a jury could ultimately determine the insureds are entitled to coverage does not require
that the insurer acted unreasonably in denying coverage.").  The court has thus far construed the
cross-motions as seeking a determination on the bad faith issue only; however, to the extent the
parties move for summary judgment on the breach of contract issue, the court denies that request
for largely the same reasons as described above with reference to bad faith.  In considering
whether Mr. Anderson in fact knew of the Operation, the court notes Country Mutual's
contention that Mr. Anderson made further misrepresentations that it discovered after it denied
coverage.  (*See, e.g.*, Def.'s Mot. at 4-7.)  Those additional misrepresentations are insufficient,
however, to show the absence of a genuine dispute of material fact regarding Mr. Anderson's
knowledge.

1    coverage under Mr. Anderson's policy where the insured "intentionally misrepresent[s]

2    any material fact . . . relating to this insurance."  (Policy at 32.)  Mr. Anderson contends

3    that his misrepresentation regarding his whereabouts was not material.  (*See* Pltf.'s Resp.

4    at 14-15.)

5          Key to resolving this issue is what constitutes a material misrepresentation.  "A

6    misrepresentation is material 'if a reasonable insurance company, in determining its

7    course of action, would attach importance to the fact misrepresented.'"  *See Ki Sin Kim v.*

8    *Allstate Ins. Co.*, 223 P.3d 1180, 1188-99 (Wash. Ct. App. 2009) (internal quotation

9    marks omitted) (quoting *Onyon v. Trucks Ins. Exch.*, 859 F. Supp. 1338, 1341 (W.D.

10   Wash. 1994)) ("A misrepresentation is material if it involves a fact that is relevant to a

11   claim or the investigation of a claim."); *Allstate Ins. Co. v. Huston*, 94 P.2d 358, 363

12   (Wash. Ct. App. 2004) ("[A] misrepresentation is material 'when it concerns a subject

13   relevant and germane to the insurer's investigation as it was then proceeding at the time

14   the inquiry was made.'" (internal quotation marks omitted) (quoting *Tran v. State Farm*

15   *Fire & Cas. Co.*, 961 P.2d 358 (Wash. 1998) (construing materiality as a limitation on the

16   insured's duty to cooperate))); *Huston*, 94 P.2d at 363 ("[A] misrepresentation is material

17   if, when made, it *could have* affected the insurer's investigation . . . ." (emphasis in

18   original)).  Prejudice to the insurer is not an element of materiality.  *See Ki Sin Kim*, 223

19   P.3d at 1188.  In addition, "materiality is generally a mixed question of law and fact" that

20   may be decided as a matter of law only "'if reasonable minds could not differ on the

21   question.'"  *Onyon*, 859 F. Supp. at 1341 (quoting *Long v. Ins. Co. of N. Am.*, 670 F.2d

22   930, 934 (10th Cir. 1982)).

1    The misrepresentation at issue here occurred when Mr. Anderson told Country

2    Mutual in his initial interview that he was golfing in Chelan, Washington, on the day of

3    the fire. (*See* Def.'s Mot. at 11; *compare* Anderson 1/10/13 Statement at 20 *with*

4    Anderson 2/8/13 Statement at 37-41.) As Mr. Anderson later admitted, he was actually

5    in Roslyn, Washington, with a prostitute named Teyana Dorsey. (*See* Anderson 2/8/13

6    Statement at 37-41.) Country Mutual does not dispute the accuracy of Mr. Anderson's

7    second statement. Instead, Country Mutual argues that the initial misrepresentation was

8    material because it concerned a subject that was relevant to its investigation at that

9    time—namely, Mr. Anderson's whereabouts at the time of the fire. (*See* Def.'s Mot. at

10   11; Def's Reply at 2-3.)

11   Mr. Anderson counters that his whereabouts were not material to Country

12   Mutual's investigation at that time. (*See* Pltf.'s Resp. at 14-15.) In support of this

13   contention, Mr. Anderson explains that at the time of the misrepresentation, all of the

14   information in Country Mutual's possession indicated that the fire was accidental and had

15   resulted from an overheated electrical outlet. (*See id.* at 4, 7-9, 14 (citing Lefebvre Dep.

16   at 36:4-11; Lefebvre Email; Thielbar Dep. at 68:1-16 (noting Mr. Thielbar's receipt on

17   1/10/13 of the SFD's opinion that the fire was accidental)).) Thus, Mr. Anderson argues,

18   Country Mutual knew that arson had not caused the fire and could not have cared about

19   his whereabouts at the time of the fire. (*See* Pltf.'s Resp. at 14-15.) Country Mutual

20   responds that it was entitled to conduct its own investigation and had not yet determined

21   the cause of the fire. (*See* Def.'s Reply at 2-3.) Yet, as Mr. Anderson points out, this

22   argument suffers in light of the absence of any independent opinion or analysis on the

1   cause of the fire in the cause and origin report that Country Mutual later issued.  (*See*

2   Pltf.'s Resp. at 15; Weber Decl. ¶ 10, Ex. H (Dkt. # 64-8) ("Kreg Report").)

3          Viewing the record in the light most favorable to Mr. Anderson, the court cannot

4   say that reasonable minds would invariably conclude that Mr. Anderson's

5   misrepresentation of his whereabouts was material.  *See Onyon*, 859 F. Supp. at 1341.

6   Instead, a rational jury could conclude that a reasonable insurance company in Country

7   Mutual's position would not attach importance to the fact misrepresented.  *See Ki Sin*

8   *Kim*, 223 P.3d at 1188-99.  In particular, a jury could look at the information that Country

9   Mutual had before it at the time of the misrepresentation, including the SFD opinion on

10  the fire's cause, and conclude that Mr. Anderson's location was not a material fact.  (*See*

11  Thielbar Dep. at 68:1-16.)  Accordingly, the court denies summary judgment on the

12  materiality of Mr. Anderson's misrepresentation of his whereabouts.[6]

13

14

_____

15          [6] *Allstate Insurance Co. v. Huston*, 94 P.3d 358 (Wash. Ct. App. 2004) is instructive in
16  demonstrating the extent to which materiality is not appropriate for summary judgment in this
    case.  There, the Hustons' house burned down, and investigators determined that arson was to
17  blame.  *Huston*, 94 P.3d at 359.  Allstate denied coverage on the basis of policy exclusions for
    arson and material misrepresentations by the insured.  *Id.* at 360.  The misrepresentations at issue
18  related to (1) a possible motive to burn the house down, (2) whether Mr. Huston had disabled the
    smoke alarm, (3) threats of arson by a third party, and (4) whether Ms. Huston could see Mr.
    Huston at the moment when he was last in the location where the fire started.  *See id.* at 359-60.
19  Throughout the litigation Allstate maintained that the Hustons were guilty of arson, *see id.*, yet
    the Washington Court of Appeals held that a rational trier of fact could have looked at the
20  evidence and "found or declined to find" that the Hustons' misrepresentations were material
    when made, *id.* at 363-64.  Here, the facts are even less supportive of materiality.  There is no
21  evidence that anyone suspected arson at any point during the investigation, nor is there any other
    explanation of why Mr. Anderson's presence in Roslyn as opposed to Chelan was relevant to
22  Country Mutual's investigation.

1  **D.     Equitable Estoppel**

2         Mr. Anderson moves for summary judgment on the issue of whether Country

3  Mutual can rely on grounds for denying coverage that it did not state in its denial letter.

4  (*See* Pltf.'s Mot. at 11-18; Pltf.'s Reply at 2-9.)  As a basis for barring Country Mutual

5  from doing so Mr. Anderson asserts the doctrine of equitable estoppel.[7]  (*See* Pltf.'s Mot.

6  at 11-14.)  This doctrine prevents an insurer from raising grounds to support a denial of

7  coverage that it did not assert in its denial letter if (1) the insurer knew or should have

8  known of the additional grounds when it denied coverage, and (2) the insured

9  demonstrates that it suffered prejudice from the insurer's failure to raise the new grounds

10  in its initial letter.  *See Hayden v. Mut. of Enumclaw Ins. Co.*, 1 P.3d 1167, 1171 (Wash.

11  2000) (citing *Bosko v. Pitts & Still, Inc.*, 454 P.2d 229, 234 (Wash. 1969)).

12        The parties' dispute on this issue centers on what constitutes new grounds for

13  denying coverage.  They agree that equitable estoppel may preclude an insurer from

14  justifying its denial of coverage on the basis of a policy provision not asserted in the

15  denial letter.  (*Compare* Pltf.'s Reply at 4 *with* Def.'s Resp. at 6-7.)  They dispute,

16  however, whether this doctrine can preclude the insurer from introducing new evidence

17  _____

18        [7] Mr. Anderson refers to the doctrine on which he relies as "mend the hold"; however, it
appears to the court that Washington has not recognized that doctrine.  *See Integrated Health
Professionals, Inc. v. Pharmacists Mut. Ins. Co.*, 422 F. Supp. 2d 1223, 1228 n.2 (E.D. Wash.

19  2006).  Rather it appears that Washington recognizes the related doctrine of equitable estoppel
applied in the context of insurance disputes.  *See Hayden v. Mutual of Enumclaw Ins. Co.*, 1 P.3d

20  1167, 1171 (Wash. 2000).  The doctrines are similar but distinct.  Both doctrines bind a party to a
prior position during subsequent litigation.  *See* Robert H. Sitkoff, Comment, *"Mend the Hold"*

21  *and Erie: Why an Obscure Contracts Doctrine Should Control In Federal Diversity Cases*, 65 U.
Chi. L. Rev. 1059, 1062-63 (1998).  Yet the majority version of mend the hold is an absolute bar

22  on changes of position, whereas equitable estoppel requires the party asserting it to show
prejudice from the change.  *Id.*

1    to support denial under the provision cited in the denial letter.  (*Compare* Pltf.'s Reply at

2    4-8 *with* Def.'s Resp. at 6-9.)  Mr. Anderson contends that the language of the opinions

3    applying equitable estoppel is broad enough to encompass new evidence (*see* Pltf.'s

4    Reply at 4-7), while Country Mutual argues that such an interpretation of the doctrine is

5    unprecedented and would impose an unfair sanction on insurers who continue to

6    diligently develop a defense after litigation has begun (*see* Def.'s Resp. at 7).

7         Precisely what evidence is in issue remains unclear from the parties' filings.

8    Nevertheless, it is clear that the disputed evidence would support the applicability of the

9    controlled substances and misrepresentation exclusions.  (*See* Denial Letter at 3-4; Def.'s

10   Resp. at 6-7.)  Accordingly, the court will discuss whether additional evidence would

11   constitute a new ground for denial with reference to each of those exclusions.

12        1.  Additional Misrepresentations

13        In its denial letter, Country Mutual stated that it was denying coverage in part

14   under the misrepresentation exclusion.  (*See* Denial Letter at 3-4.)  The letter explained

15   that "Mr. Anderson misrepresented his whereabouts at the time of the loss and the

16   identity of the person he was with at the time. . . .  Based on Mr. Anderson's

17   misrepresentations of material facts during the claims process there is no coverage under

18   the applicable policy."  (*Id.* at 4.)  The letter mentions no other alleged

19   misrepresentations, yet Country Mutual has apparently identified additional

20   misrepresentations.  (*See, e.g.*, Pltf's Mot. at 14; Def.'s Mot. at 5-7.)  The parties now

21   dispute whether Country Mutual may avoid coverage by showing that Mr. Anderson

22   made other material misrepresentations.

1    The court finds that each alleged material misrepresentation is an independent

2    ground for denying coverage.  Notably, "[a]n insured need only make one material

3    misrepresentation to void all coverage under the policy."  *Ki Sin Kim*, 223 P.3d at 1188

4    (citing *Onyon*, 859 F. Supp. at 1341).  Thus, each new material misrepresentation

5    constitutes a discrete and independently sufficient ground on which the insurer may deny

6    coverage.  *See id.*  Moreover, another court in this district has held that an insurer claims

7    a new basis for rejecting an insured's claim when the insured asserts misrepresentations

8    beyond those on which it relied at the onset of litigation.  *See Karpenski v. Am. Gen. Life*

9    *Ins. Cos.*, 999 F. Supp. 2d 1235, 1245-46 (W.D. Wash. 2014).  Country Mutual attempts

10   to distinguish *Karpenski* by pointing out that *Karpenski* dealt with rescission of an

11   insurance policy rather than denial of coverage based on a policy exclusion.  (*See* Def.'s

12   Resp. at 7-8.)  Yet Country Mutual fails to articulate why this distinction is pertinent.

13   (*See id.*)

14        Nevertheless, the court denies Mr. Anderson's motion.  Mr. Anderson has the

15   burden on summary judgment to show that there is no genuine dispute of material fact

16   that Country Mutual knew or should have known of a particular misrepresentation at the

17   time of the denial letter, and that Country Mutual's failure to raise that misrepresentation

18   in the denial letter has prejudiced him.  *See Celotex*, 477 U.S. at 323; *Hayden*, 1 P.3d at

19   1171.  He has not met that burden.  Instead, he simply references several subjects to

20   which additional misrepresentations might relate, and two pages later describes some

21   aspects of Country Mutual's discovery timeline.  (*See* Pltf.'s Mot. at 14, 16.)  Without

22   further analysis or explanation, Mr. Anderson's motion fails to show that Country Mutual

1   knew or should have known about any particular misrepresentation when it sent the

2   denial letter.  *See Hayden*, 1 P.3d at 1171; *Karpenski*, 999 F. Supp. 2d at 1245-47.

3        Mr. Anderson likewise fails to carry his burden of demonstrating prejudice.  In his

4   motion, Mr. Anderson contends that he initiated litigation and has prepared his case in

5   reliance on Country Mutual's denial letter.  (*See* Pltf.'s Mot. at 15.)  He argues that

6   Country Mutual's failure to raise additional misrepresentations in its denial letter "has

7   significantly prejudiced [his] ability to develop an effective litigation strategy and prepare

8   for trial."  (*Id.* at 17.)  Yet Mr. Anderson admits that he learned of Country Mutual's

9   intention to rely on additional misrepresentations in discovery (*see id.* at 14-15), and he

10   does not explain why he has nevertheless had insufficient time to adapt his strategy and

11   preparation.  Indeed, Mr. Anderson provides no evidence and almost no argument to

12   show prejudice.  (*See id.* at 15-18.)  As such, the court finds that genuine issues of fact

13   remain and that summary judgment is therefore inappropriate.  *See also Time Oil Co. v.*

14   *Cigna Prop. & Cas. Ins. Co.*, 743 F. Supp. 1400, 1419 (W.D. Wash. 1990) (citing *Bosko*,

15   454 P.2d 229 (Wash. 1969)) (noting that, as a general matter, estoppel claims are

16   inappropriate for summary judgment because they implicate factual issues such as

17   whether the insured suffered actual prejudice).

18        2.   <u>Additional Evidence that Mr. Anderson Knew of the Operation</u>

19        In addition to the misrepresentation exclusion, Country Mutual rests its denial of

20   coverage on the controlled substances exclusion.  (*See* Denial Letter at 3-4.)  The denial

21   letter explains that "[t]he evidence shows that Mr. Anderson knew of the marihuana

22   grow."  (*Id.* at 4.)  Earlier paragraphs also cite several facts that presumably are intended

1   to support that conclusion—namely, that Mr. Anderson admitted to visiting the House

2   and lied about his whereabouts on the day of the fire.  (*See id.* at 3-4.)  Beyond those

3   facts, the letter refers only to "the evidence."  (*See id.*)  Mr. Anderson now seeks to

4   preclude Country Mutual from introducing any other evidence of his knowledge,

5   provided that Country Mutual knew or should have known of the evidence when it wrote

6   the denial letter and that he is prejudiced by Country Mutual's failure to raise the

7   evidence in the denial letter.[8]

8       The court finds that additional evidence of Mr. Anderson's knowledge does not

9   amount to a new ground for denial in the context of equitable estoppel.  Unlike an

10  additional material misrepresentation, additional evidence of knowledge is not a discrete

11  and sufficient basis for denying coverage.  *Cf. Ki Sin Kim*, 223 P.3d at 1188 (noting that a

12  single material misrepresentation is enough to preclude coverage).  Instead, such

13  evidence is merely support for a previously articulated basis.   Further, the court's

14  research has not uncovered a single case in which a court has held that an insurer is

15  equitably estopped from presenting evidence to support its previously articulated position

16  simply because that evidence was not mentioned in a denial letter.

17      The court agrees with Country Mutual that Mr. Anderson's new evidence theory

18  of equitable estoppel would constitute an unprecedented extension of the law and would

19  _____

20      [8] Mr. Anderson also expresses concern that Country Mutual might rely on the policy
    exclusion for an insured who actually engages in the manufacture of controlled substances.  (*See*
21  Pltf.'s Mot. at 18-19 n.6.)  In its response memorandum, however, Country Mutual repeatedly
    refers to its bases for denial solely as material misrepresentations and Mr. Anderson's knowledge
22  of the Operation (*see* Def.'s Resp. at 5-7), and makes no mention of its intention to rely on the
    actual manufacture exclusion.  The court will hold Country Mutual to that position at trial.

1   impose harsh and unfair limitations on insurers.  (*See* Def.'s Resp. at 7.)  In effect, Mr.

2   Anderson's theory would require insurers to exhaustively list in their denial letters every

3   shred of evidence supporting their basis for denial lest they forfeit that evidence in

4   subsequent litigation.  As such, the court denies Mr. Anderson's motion for summary

5   judgment insofar as it seeks to preclude Country Mutual from introducing evidence of

6   Mr. Anderson's knowledge that does not appear in the denial letter.[9]

7   **E.      Immunity under RCW 48.50.075**

8          Country Mutual also moves for summary judgment on the ground that under RCW

9   48.50.075 it enjoys immunity from Mr. Anderson's extra-contractual claims.  (*See* Def.'s

10  Mot. at 14-15.)  RCW 48.50.075 provides immunity from extra-contractual claims, such

11  as bad faith, to an insurer who [1] "[i]n denying a claim . . . relies [2] upon a written

12  opinion [3] from an authorized agency specifically enumerated in RCW 48.50.020(1)(a)

13  through (g) [4] that criminal activity that is related to that claim is being investigated . . .

14  and [5] that the claimant is a target of the investigation . . . ."  RCW 48.50.075.  The

15  immunity exists, however, "only so long as [6] the incident for which the claimant may

16  be responsible is under active investigation . . . ."  *Id.*  Country Mutual argues that the

17  ――――――――――――――

18          [9] In addition, Mr. Anderson requests that the court bar Country Mutual "from relying
    upon the files and testimony . . . identified in its answer to Interrogatory No. 8 because these
19  documents are not responsive to the interrogatory."  (Pltf.'s Mot. at 15 n.4.)  Interrogatory No. 8
    requested a specific, detailed description of the facts on which Country Mutual bases its denial
    of coverage but which it did not include in the denial letter, yet Country Mutual responded with a
20  citation to almost 5,000 pages of documents.  (*See id.*)  Mr. Anderson now takes issue with the
    generality of Country Mutual's response.  (*See id.*)  The court, however, rejects Mr. Anderson's
21  request as untimely.  The deadline for discovery motions was October 17, 2014.  (*See* Sched.
    Ord. (Dkt. # 10).)  If Mr. Anderson objected to the sufficiency of Country Mutual's interrogatory
    responses, he should have raised the issue by that date, not in a footnote to a motion for partial
22  summary judgment filed on December 16, 2014.  (*See* Pltf.'s Mot. (Dkt. # 55).)

1    immunity applies here because in conducting its investigation and deciding to deny Mr.

2    Anderson's claim it relied on reports from the SPD.  (*See* Def.'s Mot. at 15.)  Country

3    Mutual points out that the Operation was illegal and contends that Mr. Anderson was the

4    "person of interest" in the SPD's investigation into the Operation.  (*Id.*)

5          Country Mutual's argument for RCW 48.50.075 immunity fails for multiple

6    reasons.  First, although the SPD is an authorized agency under the statute, *see* RCW

7    48.50.020(1)(c), Country Mutual admits that no written SPD opinion identifies Mr.

8    Anderson as the target of the SPD investigation into the Operation (*see* Def.'s Mot. at

9    15).  Detective Ortiz ultimately stated that Mr. Anderson was of interest to the SPD's

10   investigation; however, that statement came during a deposition that Country Mutual

11   conducted over one year after it denied coverage.  (*Compare* Ortiz Dep. at 1, 31:13-22,

12   33:17-34:10 *with* Denial Letter at 1.)  Thus, even if Detective Ortiz's deposition was in

13   some sense a "written opinion," a proposition that the court does not endorse, Country

14   Mutual has not demonstrated that it relied on that opinion "[i]n denying [Mr. Anderson's]

15   claim."  RCW 48.50.075.  Finally, Country Mutual offers no evidence or even argument

16   to suggest that the SPD's investigation of the Operation was ongoing at the time Country

17   Mutual denied coverage.

18         Country Mutual's assertion of RCW 48.50.075 immunity relies on a mix-and-

19   match approach to the immunity.  According to this approach, the immunity applies

20   where its discrete components exist even if they do not bear the required connection to

21   one another.  (*See* Def.'s Mot. at 14-15.)  Thus, if a police officer has an opinion that the

22   insured was of interest to a criminal investigation, that opinion need not be in written

1   form, and the insurer need not have actually relied on that opinion in denying coverage.

2   (*See id.*)  Country Mutual offers no support for this interpretation of RCW 48.50.075, and

3   the court has found none.  The plain language of the statute requires that in denying

4   coverage the insurer rely upon a written opinion identifying the insured as the target of a

5   criminal investigation.  *See* RCW 48.50.075.  Because Country Mutual fails to make such

6   a showing, the court denies its motion for summary judgment with respect to immunity

7   under RCW 48.50.075.

8   **F.    Evidence of Damages from Bad Faith**

9          In addition, Country Mutual asks the court to grant it summary judgment on Mr.

10  Anderson's bad faith claim because, according to Country Mutual, Mr. Anderson has no

11  allegations or evidence of damages, an essential element of a bad faith claim.  (*See* Def.'s

12  Mot. at 16-17.)  Country Mutual is right on the law but wrong on the facts.  Damages

13  attributable to bad faith are indeed an essential element of a bad faith claim.  *Coventry*

14  *Assocs. v. Am. States Ins. Co.*, 961 P.2d 933, 935-36 (Wash. 1998).  Yet Mr. Anderson

15  has made allegations and produced evidence sufficient to create a genuine issue of

16  material fact as to whether he suffered damages from Country Mutual's alleged bad faith.

17         In his complaint, Mr. Anderson alleges wrongful denial of coverage amounting to

18  bad faith and prays for compensation for "all consequential losses he has suffered or may

19  suffer as a result of Country Mutual's breaches."  (*See* Compl. at 2-3.)  Furthermore, Mr.

20  Anderson provides a declaration in which he suggests that he would have retained the

21  House had Country Mutual not denied coverage.  (*See* Anderson Decl. ¶ 3.)  He also

22  offers testimony from a proposed expert who asserts that Mr. Anderson has lost money

1  by failing to retain the House and use it as a rental property.  (*See* Neupert Dep. at 5, 7.)

2  In other words, Mr. Anderson has produced evidence showing that Country Mutual's

3  alleged bad faith denial of coverage has cost him money by preventing him from

4  retaining and renting out the House.  (*See* Pltf.'s Resp. at 20-21.)  The court therefore

5  finds that a genuine issue of material fact exists regarding damages attributable to bad

6  faith, and denies summary judgment on that question.

7  **G.      Fulfillment of Contractual Obligations**

8          Finally, Country Mutual contends that there is no genuine issue of material fact

9  that it has fulfilled its obligations under the contract and, therefore, that Mr. Anderson has

10 no damages for breach of contract.  (*See* Def.'s Mot. at 14.)  This argument hinges on a

11 provision in Mr. Anderson's policy that conditions payment of replacement costs on

12 actual repair or replacement by the insured.  (*See id.*; Policy at 30.)  Absent actual repair

13 or replacement, the insured is entitled only to the ACV of the property.  (*See* Policy at

14 30.)  Because Country Mutual paid the ACV to Mr. Anderson's mortgagee, Country

15 Mutual argues that it has discharged its obligations under the policy.  (*See* Def.'s Mot. at

16 14.)

17         Mr. Anderson disputes Country Mutual's reasoning on several grounds (*see* Pltf.'s

18 Resp. at 18-20), but the court finds it necessary to focus on only one to resolve this aspect

19 of Country Mutual's motion.  Specifically, Mr. Anderson argues that Country Mutual

20 cannot rely on his failure to repair or replace when its own wrongful denial of coverage

21 prevented repair or replacement.  (*See id.* at 19-20.)  Mr. Anderson claims that he would

22 have kept the House and repaired or replaced it if Country Mutual had not denied

1    coverage.  (*See id.* at 19; Anderson Decl. ¶ 3; Neupert Dep. at 5, 7.)  Following Country

2    Mutual's denial, however, Mr. Anderson lacked the funds to repair the House or even

3    stay current on his mortgage.  (*See* Pltf.'s Mot. at 19; Anderson Decl. ¶ 3.)  He ultimately

4    sold the House to avoid foreclosure.  (*See* Pltf.'s Mot. at 19; Anderson Decl. ¶ 3.)

5        Mr. Anderson relies on three out-of-state cases to support the notion that Country

6    Mutual cannot rely on his failure to perform the repair condition where its wrongful

7    denial caused that failure.  (*See* Pltf.'s Mot. at 19-20 (citing *Zaitchick v. Am. Motorists*

8    *Ins. Co.*, 554 F. Supp. 209, 216-217 (S.D.N.Y. 1982); *Rockford Mut. Ins. Co. v. Pirtle*,

9    911 N.E.2d 60, 64-67 (Ind. Ct. App. 2009); *McCahill v. Commercial Union Ins. Co.*, 446

10   N.W.2d 579, 584-85 (Mich. Ct. App. 1989)).)  Country Mutual counters that such cases

11   are "not controlling and . . . thus irrelevant."  (Def.'s Reply at 6.)

12       Although the court agrees that the authority to which Mr. Anderson cites is not

13   controlling, the court nevertheless finds it to be persuasive.  All three opinions are

14   grounded in the unremarkable proposition that an insurer cannot withhold replacement

15   value because the insured has not actually repaired or replaced where the insured was

16   unable to repair or replace due to the insurer's wrongful conduct.  *See Zaitchick*, 554 F.

17   Supp. at 216-217; *Pirtle*, 911 N.E.2d at 64-67; *McCahil*, 446 N.W.2d at 584-85.

18   Furthermore, Washington contract law recognizes the equitable principle underlying

19   these out-of-state cases.  Under Washington law, when a party prevents the occurrence or

20   fulfillment of a condition precedent, the condition is excused.  *See Highlands Plaza, Inc.*

21   *v. Viking Invest. Corp.*, 435 P.2d 669, 676-77 (Wash. 1967); *Tacoma Northpark, LLC v.*

22   *NW, LLC*, 96 P.3d 454, 459 n.4 (Wash. Ct. App. 2004) ("Failure to satisfy a condition

1   precedent does not excuse the promisor's performance if the failure was the result of

2   misconduct or fault of the promisor.").

3        Applying that principle to this case, the court concludes that genuine issues of

4   material fact remain regarding whether Country Mutual has fulfilled its obligations under

5   the contract.  Mr. Anderson contends that he would have repaired or replaced the House

6   if Country Mutual had not wrongfully denied coverage.  (*See* Pltf.'s Resp. at 19;

7   Anderson Decl. ¶ 3; Neupert Dep. at 5, 7.)  Although Country Mutual maintains that it

8   properly denied coverage (*see* Def.'s Mot. at 14), the court has denied Country Mutual's

9   motion for summary judgment on that issue (*see supra* Parts III.B-C, E), and thus a jury

10  could decide that denial was improper.  Country Mutual also contends that Mr. Anderson

11  could not have repaired in any case because his mortgagee would not have allowed it.

12  (*See* Def.'s Reply at 5.)  Yet Country Mutual fails to explain that contention or provide

13  evidence to demonstrate its merit.  (*See id.*)  In light of Mr. Anderson's testimony and the

14  testimony of his expert witness indicating that he would have repaired or replaced, the

15  court finds that a genuine issue of material fact exists on this issue.[10]  Consequently, the

16

17  _____

18  [10] Country Mutual also faults Mr. Anderson for failing to establish that he ever collected
    rental payments and thus was ever entitled to rent replacement (*see* Def.'s Reply at 5), which Mr.

19  Anderson claims he would have used to maintain ownership of the House (*see* Pltf.'s Resp. at 19;
    Anderson Decl. ¶ 3).  This argument fails for the same reason as Country Mutual's other
    arguments on this topic.  Namely, Country Mutual has not shown the absence of a genuine issue

20  of material fact.  Mr. Anderson claims that he had a paying tenant and has provided a lease
    signed by his alleged tenant.  (*See* Anderson 1/10/13 Statement at 6; Lease Email; Lease;

21  Anderson 2/8/13 Statement at 29-30.)  Country Mutual has pointed to contrary evidence and
    weaknesses in Mr. Anderson's position (*see, e.g.*, Def.'s Mot. at 5-7); however, it has not thereby

22  demonstrated its entitlement to summary judgment.  Viewing the evidence in the light most
    favorable to Mr. Anderson, the court finds that genuine issues of material fact remain regarding

1   court denies summary judgment on the issue of whether Country Mutual has fulfilled its

2   obligations under the contract.

3                           **IV.    CONCLUSION**

4          For the foregoing reasons, the court DENIES the cross-motions for summary

5   judgment (Dkt. ## 55, 58).

6          Dated this 18th day of February, 2015.

7

8

9                                         _____

10                                        JAMES L. ROBART
                                          United States District Judge

11

12

13

14

15

16

17

18

19

20

21   _____

22   whether Mr. Anderson had a paying tenant.  Country Mutual may present its arguments and
     evidence to the jury.

ORDER- 28